1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SCOTT STEELE,                              No.  2:18-cv-00584-MCE-AC

12                  Plaintiff,

13        v.                                    FINDINGS AND RECOMMENDATIONS

14   CHRISTOPHER A. PARRIS, et al.,

15                  Defendants.

16

17        This matter is before the court on plaintiff's motion for default judgment.  ECF No. 28.

18   The motion was referred to the undersigned pursuant to E.D. Cal. R. 302(c)(19).  This motion was

19   initially set for hearing on January 9, 2019 at 10:00 a.m.  Id.  None of the defendants filed a

20   response; the hearing was re-set and they were provided a final opportunity to oppose the motion

21   with a warning that failure to respond would be construed as a statement of non-opposition.  ECF

22   No. 29.  Defendants again failed to respond, and the court took the matter under submission,

23   construing defendants' lack of filing as a statement of non-opposition.  ECF No. 30.  For the

24   reasons set forth below, the recommends plaintiff's motion be GRANTED, and that judgment be

25   entered in favor of plaintiff.

26                            I.        Relevant Background

27        Plaintiff Scott Steele filed this case on March 19, 2018.  ECF No. 1.  Summonses were

28   returned executed to each defendant: Thomas E. Brenner, Jr. (ECF No. 4), First American

                                            1

Securities, Inc. (ECF No. 5), Genvest VII, LLC (ECF No. 6), Steve Coffey (ECF No. 7), First Nationle Solutions, LLC (ECF No. 8), and Christopher A. Parris (ECF No. 17). A stipulation of conditional settlement was initially entered between plaintiff and defendants Steve Coffey and First Nationle (ECF No. 15), but was later rescinded (ECF No. 18). The Clerk of Court has entered default against each defendant: Thomas E. Brenner (ECF No. 12), First American Securities (ECF No. 13), Genvest VII, LLC (ECF No. 14), Christopher A. Parris (ECF No. 20), First Nationle Solutions (ECF No. 23), and Steve Coffey (ECF No. 23).

The complaint alleges the following facts. Defendant Brenner was acting as agent and defendant of First American Securities ("FAS") in his interactions with plaintiff. ECF No. 1 at 4. Defendant Parris was also acting as an agent for FAS in his interactions with plaintiff. Id. On or about the spring of 2012, plaintiff's financial advisor sold his book of business to Parris, and plaintiff met with Parris to discuss his account and investments. Id. Parris advised plaintiff that he was conservative in his investment approach; plaintiff identified his investment objectives as capital preservation and income. Id. In June of 2012, at Parris's recommendation, plaintiff invested $65,000 in "senior units" in Genvest, with a promised interest rate of 5.6% annually and expected maturity in five years, at which time plaintiff would receive his principal plus accrued interest. Id.

In March of 2013, upon Parris's recommendation, plaintiff invested $69,500 into an unsecured note by First Nationle Solutions ("FNS"). Parris told plaintiff that the FNS investment would produce a guaranteed return of 6% and that it would mature in three years. Id. at 5. In connection with the FNS investment, defendant Coffey acted as plaintiff's loan servicing agent, knowing that plaintiff was a California resident. Id. Plaintiff did not receive a prospectus or private placement memorandum for the Genvest or FNS investments. Id. Plaintiff did not receive any documents disclosing risks associated with either investment. Id. Plaintiff trusted Parris because he and Brenner were helpful in liquidating his late father's investment in Genvest, which was paid in full. Id. at 6. Plaintiff believes that Genvest and FNS paid substantial commissions, startup costs, and management fees to Parris and FAS, and were actually highly

////

speculative, risky, illiquid investments appropriate only for wealthy and sophisticated investors willing to lose their entire investment.  Id.

The FNS investment was set to mature in May of 2016, and plaintiff attempted to liquidate his investment at that time.  Id.  FNS did not repay any part of plaintiff's $69,500 investment despite promises it would pay.  Id.  Further, FNS did not pay quarterly fees to the custodian, which FNS was obligated to pay, in the third and fourth quarters of 2017 and the custodian ultimately charged those fees to plaintiff.  Id. at 7.

The Genvest investment was set to mature in June of 2017, however, in June of 2016 Genvest informed plaintiff he could liquidate early without penalties.  Id.  Plaintiff attempted to do so in August of 2016.  Id.  Plaintiff was told repeatedly that he was expected to receive his monies by the first quarter of 2017.  That did not occur, though plaintiff received two interest payments, totaling $2,700, in April of 2017.  Id.  Plaintiff was told by Genvest that he would be paid in full by July of 2017, but he never received his payment.  Id.  Plaintiff made several inquiries but has received no response since mid-July of 2017.  Id.  Plaintiff has not received any payment on his principal investment with Genvest of $65,000 nor any interest payments, with the exception of the $2,700 in interest that was paid in April of 2017.  Id.

Plaintiff is informed and believes that Genvest and FNS are securities defined by California Corporations Code Section 25019.  Id.  Accordingly, the Genvest and FNS investment could not legally be solicited or sold to a California resident unless they were qualified pursuant to California Corporations Code § 25110 or were exempt.  Id.  Plaintiff believes that the Genvest and FNS investments were not qualified or exempt, and their sale was therefore illegal.  Id.  In order to solicit the sale of the securities at issue Parris was required to be licensed by the Financial Industry Regulatory Authority ("FINRA") and was required to be associated with a FINRA member broker-dealer, but he did not have the required license or association.  Id.

Parris held himself out as having greater experience and expertise than he did.  Id. at 8. Plaintiff believes the relationship between himself and Parris was fiduciary in nature.  Id. Defendants FAS, Genvest, and FNS employed Parris as their agent, promoter, owner, manager, director and/or control person, and are therefore responsible for his acts.  Id.  Brenner was, at all

relevant times, responsible for supervising Parris and ensuring his compliance with relevant laws. Id. Defendants' conduct has caused plaintiff significant harm, and he will have to work longer and/or have significantly less money for his retirement. Id. at 1.

## II. Motion

Plaintiff moves for default judgment against all defendants on all counts. ECF No. 28. Plaintiff seeks the following relief:

- Judgment against Christopher A. Parris, Thomas E. Brenner, Jr. and First American Securities, Inc., jointly and severally, in the amount of $194,714.12 plus statutory costs in an amount to be determined with a later-filed bill of costs;

- Judgment against Steve Coffey and First Nationle Solutions, LLC, jointly and severally, in the amount of $99,496.36 plus statutory costs in an amount to be determined with a later-filed bill of costs; and

- Judgment against Genvest VII, LLC in the amount of 95,117.76 plus statutory costs in an amount to be determined with a later filed bill of costs.

ECF No. 29 at 6.

## III. Analysis

A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

(1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake

in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily disfavored.  Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law") (citation and quotation marks omitted); Abney v. Alameida, 334 F.Supp.2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim.").  A party's default conclusively establishes that party's liability, although it does not establish the amount of damages.  Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the liability of the defaulting party).

B.  The Eitel Factors

1.  Factor One: Possibility of Prejudice to Plaintiff

The first Eitel factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment.  See PepsiCo, Inc., 238 F.Supp.2d at 1177.  Here, plaintiff would suffer prejudice if the court did not enter a default judgment because he would be without recourse for

recovery.  Accordingly, the first <u>Eitel</u> factor favors the entry of default judgment.

2.  <u>Factors Two and Three: Merits of Claims and Sufficiency of Complaint</u>

The merits of plaintiff's substantive claims and the sufficiency of the complaint are considered here together because of the relatedness of the two inquiries.  The court must consider whether the allegations in the complaint are sufficient to state a claim that supports the relief sought.  <u>See</u> <u>Danning</u>, 572 F.2d at 1388; <u>PepsiCo, Inc.</u>, 238 F.Supp.2d at 1175.  Here, the merits of the claims and sufficiency of the complaint favor entry of default judgment. Plaintiff brings thirteen causes of action: (1) fraud/intentional misrepresentation against Parris, FAS, Genvest, and FNS; (2) negligent misrepresentation against Parris, FAS, Genvest, and FNS; (3) fraud/omissions against Parris, Brenner, FAS, Genvest, and FNS; (4) violation of California Corp. Code §25401 against Parris and FNS; (5) violation of California Corp. Code §25504 against Parris; (6) violation of California Corp. Code §25504.1 against Parris, Brenner, and FAS; (7) churning against defendants Parris and FAS; (8) breach of fiduciary duty against Parris, Brenner, FAS, Genvest, and FNS; (9) professional negligence against Parris, Brenner, and FAS; (10) breach of written contract against Genvest, FNS and Coffey; (11) rescission against Genvest and FNS; (12) money had and received against Genvest and FNS; and (13) money lent against FNS.  ECF No. 1.

i.  <u>Plaintiff Successfully Alleges Fraud Against Parris and FAS (Claim 1)</u>

Plaintiff has adequately pled and supported a claim of fraud or negligent misrepresentation against defendants Parris and FAS, but not against FNS or Genvest because those claims are barred by the economic loss rule.  To state a claim for fraud or intentional misrepresentation under California law, a plaintiff must allege: (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." <u>Baltazar v. Apple, Inc.</u>, 2011 WL 588209, at *3 (N.D.Cal. Feb.10, 2011) ("Baltazar I").  To properly state an omission or concealment claim, plaintiff "must allege specifically a representation actually made by the defendant that is contrary to the omission, or an omission of a fact that the defendant was obliged to disclose." <u>Baltazar v. Apple, Inc.</u>, 2011 WL 3795013, at *5 (N.D.Cal. Aug. 26, 2011)

6

("Baltazar II") (citing <u>Daughtery v. American Honda Motor Co.</u>, 144 Cal.App.4th 824, 835 (2006)).

The "economic loss rule" places additional restrictions on a plaintiff's ability to succeed on each of plaintiff's tort claims. In short, "the economic loss rule 'prevent[s] the law of contract and the law of tort from dissolving one into the other.'" <u>Robinson Helicopter Co. v. Dana Corp.</u>, 34 Cal. 4th 979, 988 (2004) (rule precludes recovery for "purely economic loss due to disappointed expectations, unless [the plaintiff] can demonstrate harm above and beyond a broken contractual promise.") (citation omitted). The rule's underlying concept is that tort remedies are an inappropriate means to enforce contractual agreements. When a plaintiff links its fraud claim to a party's alleged failure to comply with a contractual duty, the proper claim is breach of contract, not fraud. There is an exception to the rule where the defendant breaches a legal duty in tort that is independent of the breached contract. <u>Id.</u> at 989–91. The <u>Robinson Helicopter</u> case, which first recognized this exception, involved a helicopter manufacturers' contract breach via non-conforming product production, and a related tortious act of issuing false certificates that the product did in fact conform to specifications. <u>Id.</u> The court held the economic loss rule did not bar the tort law claim because issuing the false certificates was unquestionably an "affirmative intentional misrepresentation" that amounted to a "tortious conduct [ ] separate from the breach itself[.]" <u>Id.</u> at 991. The <u>Robinson Helicopter</u> exception is narrow. To benefit, the tort claim must allege an affirmative misrepresentation distinct from the contract breach, *and* the claim must allege damages beyond what the contract breach caused. <u>Id.</u> at 893.

Here, because plaintiff's fraud and contract claims as pled are inseparable as to Genvest and FNS, the <u>Robinson Helicopter</u> exception does not apply. Plaintiff's fraud claims allege that defendants fraudulently induced plaintiff to invest in "high risk, speculative, and volatile" investments. ECF No. 1 at 14. Unlike <u>Robinson Helicopter</u>, in which the fraud claim relied on the separate affirmative act of issuing false compliance certificates that was distinct from the act that breached the contract, namely the making of nonconforming helicopter clutches, plaintiff's fraud claims here duplicate his contract claims. The legal theory, factual allegations, and relief sought under his fraud-based tort claims mirror those sought under his breach of contract claims.

ECF No. 1 at 37-38; ECF No. 28 at 5-6 (seeking identical relief on all claims). The economic loss rule applies to bar plaintiff's fraud claims against Genvest and FNS.

Plaintiff does not allege that he entered into a contract with Parris or FAS with respect to his investments. Instead, plaintiff alleges only that he entered into a "customer agreement" with FAS that applied to FAS's agents, Parris and Brenner. ECF No. 1 at 33. Thus, there is no bar to plaintiff's fraud claim against FAS and Parris. According to plaintiff's Complaint, Parris made an affirmative misrepresentation to plaintiff that the Genvest investment was a "safe investment" that would produce a "guaranteed return of 6.5%." ECF No. 1 at 9. Parris affirmatively misrepresented the FNS investment as "safe" with a "guaranteed return of 6%" and mischaracterized it as a real estate investment rather than a security. Id. at 10. For the purposes of default judgment, Parris "knew, at the time they were made, that the foregoing representations were false" or that the statements were made recklessly with knowledge that he did not know whether they were true. Id. Parris intended to deceive plaintiff into investing moneys into Genvest and FNS, thereby obtaining substantial money for himself, Brenner, FAS, Genvest and FNS. Id. at 10-11. Plaintiff justifiably relied on Parris. Id. at 11. As a result, plaintiff lost his investment and the vast majority of interest thereon. Id. At all relevant times, Parris was acting as managing agent of FAS. Id. These allegations adequately allege fraud against defendants Parris and FAS. See Baltazar I, 2011 WL 588209 at *3. Because liability has thus been established against Parris and FAS, no further claims against these defendants are analyzed herein.

### ii. Negligent Misrepresentation Not Stated Against Genvest or FNS (Claim 2)

Plaintiff's tort claim of negligent misrepresentation against Genvest and FNS is barred by the economic loss rule, discussed in detail above. Liability for these defendants is not established based on this claim

### iii. Fraud by Omission Stated Only Against Brenner (Claim 2)

Plaintiff's claim of fraud by omission against Genvest and FNS is also barred by the economic loss rule. Liability for these defendants is not established based on this claim. Plaintiff's fraud by omission claim against Brenner establishes liability, however. "There are four

circumstances in which nondisclosure or concealment may constitute actionable fraud: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." LiMandri v. Judkins, 52 Cal.App.4th 326, 337 (1997). A fiduciary relationship is "any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party." Cleveland v. Johnson, 209 Cal. App. 4th 1315, 1338 (2012) (citation and quotation marks omitted). A plaintiff must show either that a defendant agreed to become a fiduciary, or the law's involuntary imposition of a fiduciary duty upon the defendant. City of Hope Nat'l Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 386 (2004).

Plaintiff establishes a claim against Brenner for fraud by omission. "Like a trustee, an investment advisor may be considered a fiduciary." Bear, Stearns & Co. v. Buehler, 432 F. Supp. 2d 1024, 1027 (C.D. Cal. 2000), aff'd, 23 F. App'x 773 (9th Cir. 2001). Brenner was plaintiff's investment advisor. ECF No. 1 at 12. Brenner had knowledge that Genvest and FNS were speculative and high-risk investments and contained substantial transaction costs, and this information was actively concealed from plaintiff while only partial truth was shared. Id. at 14. Plaintiff has therefore stated a fraud by omission claim against defendant Brenner. See LiMandri, 52 Cal.App.4th at 337. Because defendant Brenner's liability is established, no further claims against him are analyzed herein.

### iv. Breach of Written Contract against Genvest, FNS and Coffey

Plaintiff is entitled to default judgment on his claim for breach of written contract against Genvest, FNS, and Coffey. The elements of a cause of action for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach and (4) damage to the plaintiff as a result of the breach. Wall Street Network, Ltd. v. New York Times Co., 164 Cal.App.4th 1171, 1178 (2008). Taking the well-pleaded allegations of the complaint to be true, plaintiff successfully makes a breach of contract claim against each listed defendant. See, e.g., Petro-Diamond Inc., v. SCB & Assocs., LLC, No. SACV-12-01893-

CJC(ANx), 2013 WL 12138724, at *3 (C.D. Cal. Sept. 18, 2013).

Plaintiff alleges that on or about June 2012, he and Genvest entered into a written agreement containing the material terms that (a) plaintiff would invest $65,000 into "senior units" at Genvest, (b) the Genvest investment would mature in June of 2017, and (c) upon maturity, plaintiff would be repaid his principal plus 6.5% interest per annum.  ECF No. 1 at 37.  In March of 2013, plaintiff and FNS entered into a written contract containing the material terms that (a) plaintiff would loan $69,000 to FNS, (b) the FNS investment would mature in March of 2016, and (c) upon maturity, plaintiff would be repaid his principal plus 6% interest per annum.  Id. at 38.  Also in March 2013, plaintiff and Coffey entered into a written contract by which Coffey agreed to act as the loan servicing agent for the FNS loan, and as such Coffey would retain records including payment history, bank statements and loan documents, provide a full accounting of these records to plaintiff upon request, proceed diligently to collect any past due payments, take all necessary actions to correct a default, promptly notify plaintiff if he because aware of an issue with the borrower that might impair repayment of the loan, and provide documentation to plaintiff immediately in the event that the unsecured note became worthless.  Id.  Plaintiff's allegations satisfy the first element for breach of contract.  Wall Street Network, Ltd., 164 Cal.App.4th at 1178.

Plaintiff alleges he performed all conditions of the written contracts described above.  ECF No.1 at 38.  In July of 2017 and continuously thereafter, Genvest breached its contract with plaintiff by failing to pay him any part of his principal and all but $2,700 of accrued interest.  Id.  On or about March 20, 2016, and continuously thereafter, FNS breached its contract by failing to pay any part of the due principal and interest.  Id.  In March of 2016 and continuously thereafter, Coffey breached his contract by failing to provide a full accounting to plaintiff of the payment history for the FNS investment, including funds received from the borrower and any funds distributed by agents to cover expenses, bank statements and loan documents, by failing to proceed diligently to collect past due payments, by failing to take necessary actions to correct the default, by failing to notify plaintiff of events that might impair the repayment of the loan, and by failing to advise plaintiff as to whether or not the unsecured note had become worthless.  Id. at

38-39.  Each breach caused financial harm to plaintiff, and all remaining elements for breach of contract are satisfied as to Genvest, FNS, and Coffey.  See Wall Street Network, Ltd., 164 Cal.App.4th at 1178.  Because defendants' Genvest, FNS, and Coffey's liability is established, no further claims against them are analyzed herein.

### 3.  Factor Four: The Sum of Money at Stake in the Action

Under the fourth Eitel factor, the court considers the amount of money at stake in relation to the seriousness of defendant's conduct.  Here, plaintiff seeks default judgment against defendants Parris, Brenner, and FAS, jointly and severally, in the amount of $194,714.12, plus statutory costs.  ECF No. 28 at 6.  Plaintiff seeks judgment against defendants Coffey and FNS, jointly and severally, in the amount of $99,596.36, plus statutory costs.  Id.  Finally, plaintiff requests judgment against Genvest in the amount of $95,117.17 plus statutory costs.  Id.  Based on review of the complaint, these amounts appear to provide plaintiff with double recovery.  See, e.g., Oceans II Inc. v. Skinnervision Inc., No. CV 12-6867-CAS (EX), 2013 WL 12228686, at *1 (C.D. Cal. Sept. 9, 2013).

Plaintiff made only two investments, and he is therefore entitled to recover only the actual damages related to those two investments: (1) $69,500.00 plus 6% annual interest from March of 2013 (joint and several liability as to Parris, FNS, Coffey, Brenner, FAS); and (2) $65,000.00 plus 6.5% annual interest annually from June of 2012 (joint and several liability as to Parris, Genvest, FAS, Brenner).  ECF No. 1 at 2-9.  Plaintiff submitted a statement, with an accompanying declaration, from the FNS investment dated through March 30, 2017, showing an owed-total amount $93,130.00 (principal plus dividends earned).  ECF No. 24-2 at 4.  Plaintiff's counsel calculated interest from March 21, 2017 through October 8, 2018 (the time of seeking judgment) at $6,466.36.  ECF No. 24-1 at 2.  This amounts to a total judgment of $99,596.36 connected to the FNS investment, for which all defendants involved in the FNS investment are jointly and severally liable.

Plaintiff attached a statement and accompanying declaration from the Genvest investment listing credits through September 30, 2017.  ECF No. 24-2 at 4.  The principal plus interest earned reflected on this statement amounts to $90,811.73.  Id.  Plaintiff submitted a declaration

11

calculating interest from October 1, 2017 through October 8, 2018 at $4,406.03. ECF No. 24-1 at 2. This amounts to a total judgment of $95,218.46 connected to the Genvest investment, for which all defendants involved in the Genvest investment are jointly and severally liable.

These amounts are reasonable because they reflect plaintiff's actual losses. As adjusted to prevent double recovery, the amount at issue is proportionate to the seriousness of defendant's conduct and this factor favors entry of default judgment.

### 4. Factor Five: Possibility of Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its claims and affidavits in support of its allegations. Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F.Supp.2d at 1177.

### 5. Factor Six: Whether Default Was Due to Excusable Neglect

Upon review of the record before the court, there is no indication that the default was the result of excusable neglect. See PepsiCo, Inc., 238 F.Supp.2d at 1177. Plaintiff served each defendant with the complaint. ECF Nos. 4 (Brenner), 5 (FAS), 6 (Genvest), 7 (Coffey), 8 (FNS), 17 (Parris). The Clerk of Court entered default as to each defendant, the last entry occurring on October 3, 2018. ECF Nos. 12 (Brenner), 13 (FAS), 14 (Genvest), 20 (Parris), 23 (Coffey/FNS). Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendants failed to defend themselves in this action. This record supports a conclusion that the defendants have chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

### 6. Factor Seven: Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782

F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F.Supp.2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F.Supp.2d 1039, 1061 (N.D. Cal. Mar. 5, 2010).  Accordingly, although the court is cognizant of the policy favoring decisions on the merits – and consistent with existing policy would prefer that this case be resolved on the merits – that policy does not, by itself, preclude the entry of default judgment.

       7.   Conclusion: Propriety of Default Judgment

      Upon consideration of all the Eitel factors, the court concludes that plaintiff is entitled to the entry of default judgment against each defendant.  What remains is the determination of the amount of damages to which plaintiff is entitled.

C.   Terms of Judgment

      As discussed in more detail above, plaintiff has demonstrated actual damages as follows, related to the two investments at issue: $99,596.36 in damages for the FNS investment, jointly and severally and severally owed by Parris, FNS, Coffey, Brenner, and FAS); and $95,218.46 in damages for the Genvest investment, jointly and severally owed by Parris, Genvest, FAS, and Brenner.  Plaintiff is also entitled to costs pursuant to Fed. R. Civ. P. 54(d)(1).  Costs will be awarded by separate application and are not calculated at this time.

**IV.    Conclusion**

      For the reasons explained above, it is RECOMMENDED THAT:

      1.  Plaintiff's November 19, 2018 motion for default judgment, (ECF No. 28) be GRANTED;

      2.  Judgment be entered against defendants Christopher A. Parris, Thomas E. Brenner, Steve Coffey, First American Securities, Inc., and First Nationle Solutions, LLC, jointly and severally, in the amount of $99,596.36;

      3.  Judgment be entered against defendants Christopher A. Parris, Thomas E. Brenner, Genvest VII, LLC, and First American Securities, Inc., jointly and severally, in the amount of $95,218.46; and

1     4.  This case be closed.

2         These findings and recommendations are submitted to the United States District Judge

3  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty one days

4  after being served with these findings and recommendations, any party may file written

5  objections with the court and serve a copy on all parties.  Id.; see also Local Rule 304(b).  Such a

6  document should be captioned "Objections to Magistrate Judge's Findings and

7  Recommendations."  Any response to the objections shall be filed with the court and served on all

8  parties within fourteen days after service of the objections.  Local Rule 304(d).  Failure to file

9  objections within the specified time may waive the right to appeal the District Court's order.

10 Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57

11 (9th Cir. 1991).

12 DATED: January 22, 2019

13

    ALLISON CLAIRE
14  UNITED STATES MAGISTRATE JUDGE